## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff–Appellant, v. WILLIAM G. ROYSTON, Defendant–Appellee

No. 14500

(USDC NO. 89–00358 ACK)

AUGUST 23, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY MOON, J.

The United States District Court for the District of Hawaii, pursuant to Rule 13 of the Hawaii Rules of Appellate Procedure,[1] certified the following question to this court:

> Whether Haw. Rev. Stat. [(HRS)] § 431–448(a) (1985) [Hawaii's uninsured motorist statute] permits a government employee to recover uninsured motorist benefits for work related injuries, where that employee is statutorily barred by the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.*, from prosecuting a tort action against the uninsured tortfeasor?

As a condition precedent to recovery of uninsured motorist benefits under HRS § 431–448(a), a person must show that he or she is "legally entitled to recover damages" from the uninsured tortfeasor. However, when the uninsured tortfeasor is the employer of such person, the requirement of HRS § 431–448(a) cannot be met since the "exclusive remedy" provision of the workers' compensation statute would preclude a tort claim against the employer. We therefore answer the certified question in the negative.

---

[1] Rule 13 of the Hawaii Rules of Appellate Procedure provides:

(a) **When Certified.** When a federal district or appellate court certifies to the Hawaii Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaii which is determinative of the cause, and that there is no clear controlling precedent in the Hawaii judicial decisions, the Hawaii Supreme Court may answer the certified question by written opinion.

## I.

On May 12, 1988, William G. Royston (Royston) was employed as a federal police officer for the Pearl Harbor Naval Base. While seated in his assigned patrol vehicle, which was owned by the United States government, Royston sustained personal injuries when the driver's seat he was adjusting collapsed backwards unexpectedly. As a result of the accident, Royston sought and received workers' compensation benefits under the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.*

Royston made a claim for uninsured motorist benefits under his own automobile liability insurance coverage with State Farm Mutual Automobile Insurance Company (State Farm) based on his contention that the patrol vehicle assigned to him was "uninsured" because it was not covered under any automobile liability policy on the date of the accident. Royston argues that under FECA he will not recover all the damages that he could otherwise recover from an individual tortfeasor in a personal injury action, and therefore seeks uninsured motorist benefits with respect to such uncompensated elements of damages. Royston further argues that since the policy itself contemplates payment of uninsured motorist benefits in conjunction with the insured's receipt of workers' compensation benefits, he is entitled to such benefits.

Hawaii's uninsured motorist statute, HRS § 431–448(a), provides in pertinent part (emphasis added):

> No automobile liability or motor vehicle liability policy insuring against loss resulting from bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered ... with respect to any motor vehicle ... unless coverage is provided ... for the protection of persons insured thereunder who are *legally entitled to recover damages from*

*owners or operators of uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom. . . .

State Farm's uninsured motorist provision, which is consistent with HRS § 431–448(a), provides as follows (emphasis added):

We will pay damages for bodily injury an insured is *legally entitled to collect from the owner* or driver *of an uninsured motor vehicle.* The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

In response to Royston's claim, State Farm filed a complaint for declaratory relief seeking a declaration that uninsured motorist coverage is not applicable to Royston's accident because its uninsured motorist provision and Hawaii's uninsured motorist statute, HRS § 431–448(a), limit uninsured motorist benefits to those "who are legally entitled to recover damages from owners . . . of uninsured motor vehicles." State Farm argues that FECA creates a federal employee's exclusive remedy for work–related injuries. FECA limits the federal government's liability as follows:

The liability of the United States . . . under this subchapter . . . with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . . to the employee . . . and any other person otherwise entitled to recover damages from the United States . . . because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. . . .

5 U.S.C. § 1186(c). State Farm reasons that since FECA bars Royston from asserting a tort claim against the federal

government, which owned the uninsured vehicle, he is not "legally entitled to recover damages."

State Farm filed a motion for summary judgment, for which the determinative legal issue is the certified question set forth above. For purposes of this appeal, State Farm agrees that the government vehicle is "uninsured." However, in its motion for summary judgment, State Farm reserved its right to argue at trial that the government vehicle was insured since the United States Government is a self–insurer.[2] Thus, for purposes of the discussion that follows, we presume that the government vehicle is "uninsured."

## II.
## A.

With one exception,[3] every court that has decided the precise issue now before this court has concluded that uninsured motorist coverage is not available to a claimant whose tort action is barred by the "exclusive remedy" provision of a workers' compensation statute.[4] We are persuaded by the rationale of the overwhelming majority.

---

[2] HRS § 431–448(a), the uninsured motorist statute in effect at the time of Royston's accident, did not define "insured motor vehicle." The question raised is whether an "insured motor vehicle" is limited to vehicles covered by an insurance policy and excludes self–insured vehicles. The current motor vehicle insurance chapter's definition of "insured motor vehicle" includes self–insured motor vehicles. HRS § 431:10C–103(4)(B) (1987).

[3] See *Barfield v. Barfield*, 742 P.2d 1107 (Okla. 1987), discussed *infra* at 9.

[4] See *Kough v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 237 N.J. Super. 460, 568 A.2d 127 (1990); *Cormier v. National Farmers Union Property & Casualty Co.*, 445 N.W.2d 644 (N.D. 1989); *Aetna Casualty and Sur. Co. v. Dodson*, 235 Va. 346, 367 S.E.2d 505 (1988); *Williams v. Thomas*, 187 Ga. App. 527, 370 S.E.2d 773 (1988); *Allstate Ins. Co. v. Boynton*, 486 So. 2d 552 (Fla. 1986); *Perkins v. Insurance Co. of N. America*, 799 F.2d 955 (5th Cir. 1986);

In the most recent case, **Kough v. New Jersey Automobile Full Insurance Underwriting Association**, 237 N.J. Super. 460, 568 A.2d 127 (1990), which echoes the majority view, claimant Kough was injured while riding in an automobile driven by an uninsured co–employee. Kough received benefits under New York's Workers' Compensation Law, which immunized the negligent co–employee from a tort suit. Kough brought suit to compel her own insurer to arbitrate her claim for uninsured motorist benefits. The uninsured motorist insurance policy provision at issue in **Kough** and New Jersey's uninsured motorist statute are similar to State Farm's policy provision and Hawaii's uninsured motorist statute. Each permitted uninsured motorist recovery where the claimant was "legally entitled to recover" damages from the uninsured motorist. Finding that Kough was not "legally entitled to recover" damages from the uninsured co–employee, the court stated:

> Two rationales are generally relied on in cases holding in favor of the insurer. The first is that the express language of the policy (and usually the statute) requires that the insured be legally entitled to recover damages. Such coverage is considered "contingent upon there being liability" by an uninsured motorist. Since a coemployee [sic] cannot be liable, neither can the insurer. . . .
>
> The second and better rationale emphasizes the intention of the Legislature since most of the jurisdictions

---

*Hubbel v. Western Fire Ins. Co.*, 218 Mont. 21, 706 P.2d 111 (1985); *Mayfield v. Casualty Reciprocal Exchange*, 442 So. 2d 894 (La. Ct. App. 1983), *writ denied*, 445 So. 2d 1230 (La. 1984); *Peterson v. Kludt*, 317 N.W.2d 43 (Minn. 1982); *O'Dell v. State Farm Mut. Auto. Ins. Co.*, 173 Ind. App. 106, 362 N.E.2d 862 (1977); *Williams v. Country Mut. Ins. Co.*, 28 Ill. App. 3d 274, 328 N.E.2d 117 (1975); and *Hopkins v. Auto–Owners Ins. Co.*, 41 Mich. App. 635, 200 N.W.2d 784 (1972).

that have addressed the issue mandate [uninsured motorist] coverage by statute.

*Kough*, 237 N.J. Super. at 466–67, 568 A.2d at 131. Citing the rationale found in *Sayan v. United Services Automobile Association*, 43 Wash. App. 148, 716 P.2d 895 (1986), the *Kough* court further explained that

> in tracing the history of financial responsibility statutes, the *Sayan* court noted that [uninsured motorist] coverage was intended to fill a "gap" to compensate innocent automobile accident victims injured by drivers who violated the statutory requirement of carrying liability coverage. With regard to whether the innocent victim should have a more effective remedy against his [uninsured motorist] carrier than he would have against the negligent driver himself, who for some reason was immune from tort liability, the court concluded, after considering the statute:
>
> > We see no evidence that the Legislature intended for the victim of an uninsured motorist to receive compensation that he could not obtain even were the negligent driver in compliance with the financial responsibility statutes.

*Kough*, 237 N.J. Super. at 467, 568 A.2d at 131 (citations omitted).

Similarly, our review of the legislative history of Hawaii's uninsured motorist statute confirms our opinion that such coverage does not apply unless the uninsured owner or operator is liable in tort. When HRS § 431–448(a) was originally enacted in 1965, a House Standing Committee Report included the following:

> An insurance company offering uninsured motorist protection engages to pay to the insured . . . sums . . . for any uncollectible *valid claim* or unsatisfied judgment for damages resulting from bodily injury or death, resulting from the ownership, maintenance or use of an

automobile. *The claim becomes payable when the innocent victim shows that his claim is valid, that is, that there is legal liability on the person alleged to be responsible*[.]

House Stand. Comm. Rep. No. 194, 1965 House Journal, at 582 (emphasis added).

In the present case, Royston claims that the federal government, which owned the vehicle involved in the accident, is "the person alleged to be responsible." However, the alleged tortfeasor, his employer, is immune from suit and thus is not "legally liable." Therefore, Royston does not have a "valid claim" within the meaning of the uninsured motorist statute.

Under both State Farm's uninsured motorist provision and the language of HRS § 431–448(a), tort liability of the uninsured owner or operator is a prerequisite for recovery. *See Aetna Casualty & Sur. Co. v. Dodson*, 235 Va. 346, 350–51, 367 S.E.2d 505, 508 (1988) (phrase "legally entitled to recover," interposes a condition precedent to uninsured motorist insurer's obligation, requirement that insured have legally enforceable right to recover damages from uninsured motorist). However, Royston argues that the Hawaii uninsured motorist statute should be broadly construed to apply even where tort immunity is conferred by other statutes. To adopt Royston's position would be to ignore the plain, unambiguous language of the insurance contract and the uninsured motorist statute. *See Perkins v. Insurance Co. of N. America*, 799 F.2d 955, 962 (5th Cir. 1986) (phrase "legally entitled to recover damages" is "simply too unambiguous to admit of judicially created exception."). Moreover, the adoption of Royston's position would be anomalous because it would place him in a better position by virtue of the fact that the federal government vehicle was uninsured. If the government vehicle had been insured, Royston would not have been able to recover against that insurance policy since FECA would have barred any tort action against the Government.

The expressed purpose of Hawaii's uninsured motorist statute is to "promote protection, through voluntary insurance, for persons who are injured by uninsured motorists who *cannot pay* for personal injuries caused by motor vehicle accidents." House Stand. Comm. Rep. No. 194, 1965 House Journal, at 582 (emphasis added). It is clear that our legislature intended to provide for those instances where persons have suffered personal injuries for which no compensation or recourse would be available to the injured party due to the financial irresponsibility of the guilty motorist. We see no need to "torture the meaning" of the uninsured motorist statute to provide a remedy to Royston when he has already been provided with one. *See Allstate Ins. Co. v. Boynton*, 486 So. 2d 552, 559 (Fla. 1986).

The sole exception to the majority view is found in *Barfield v. Barfield*, 742 P.2d 1107 (Okla. 1987). In a sharply divided five to four decision, the Supreme Court of Oklahoma reversed the trial court's grant of summary judgment in favor of the uninsured motorist carrier. The *Barfield* court held that the wife of an employee who was killed on the job could recover uninsured motorist benefits even though she had already received death benefits from her husband's employer pursuant to the provisions of Oklahoma's Workers' Compensation Act. Despite the language of the Oklahoma uninsured motorist statute, which is similar to Hawaii's, the court decided that the wife's claim was "purely contractual" and that the "[e]mployer–employee *tort* immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer–employee relationship." *Id.* at 1111 (emphasis in original). The court interpreted the phrase "legally entitled to recover" to mean simply that the insured be able to establish fault on the part of the uninsured motorist giving rise to damages and to prove the extent of those damages. Thus, the *Barfield* majority concluded that uninsured motorist coverage

"may be co–existent with the protection under the Workers' Compensation Act." *Id.* at 1112.

Relying on the majority's reasoning in *Barfield*, Royston asserts that the immunity imposed by workers' compensation should not preclude his recovery of uninsured motorist benefits pursuant to his contract with State Farm. We disagree. We believe that the dissenting opinion in *Barfield*, which is in accord with the majority of jurisdictions who have faced the same issue, expresses the better–reasoned view. Under the reasoning of the dissent, uninsured motorist coverage "extends *only* to situations in which the offending motorist *lacks insurance* . . . ; it does not apply when the owner or operator *is cloaked with immunity from liability.* In the latter event, the insured *cannot* be regarded as one who, within the meaning of [Oklahoma's uninsured motorist statute], stands '. . . *legally entitled to recover damages* from . . .' the uninsured tortfeasor." *Id.* at 1113 (emphasis in original).

In light of the clear and unambiguous language "legally entitled to recover," as well as the expressed purpose and intent of Hawaii's uninsured motorist statute, we decline to adopt the holding of the *Barfield* court, which disregards the plain meaning of Oklahoma's uninsured motorist statute.

### B.

Royston further argues that "the standard form uninsured motorist endorsement contemplates payment of uninsured motorist benefits in conjunction with the insured's receipt of workers' compensation benefits." Royston points to the following provision contained in State Farm's policy:

> THERE IS NO [UNINSURED MOTORIST]
> COVERAGE:
>
> . . . .

2. TO THE EXTENT IT BENEFITS:

    a. ANY WORKER'S COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

    b. A SELF–INSURER UNDER ANY WORKER'S COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

(Emphasis in original.)

Royston argues that "[t]he clear import of such a provision is to attempt to avoid any lien a worker's compensation insurer or self–insured might have with respect to proceeds paid under the uninsured motorist coverage." State Farm agrees that this contractual provision, commonly referred to as the workers' compensation "set–off" clause, is intended to preclude duplicative payment of uninsured motorist and workers' compensation benefits. However, State Farm argues, and we agree, that the set–off provision applies only in those cases where an insured was injured while in the course and scope of his employment, entitling him to workers' compensation benefits, and where such injuries were caused by an uninsured stranger to the employment who was not protected by the workers' compensation immunity.

In *Dodson v. Aetna Casualty and Surety Co.*, 649 F. Supp. 1455 (E.D. Va. 1986), *rev'd*, 851 F.2d 736 (4th Cir. 1988), the federal court adopted the very argument advanced by Royston in this case and held that uninsured motorist benefits be paid to plaintiff with an offset for workers' compensation coverage. The Virginia Supreme Court, on a certified question from the Fourth Circuit Court of Appeals, found that the condition precedent interposed by the unambiguous phrase "legally entitled to recover as damages" was not met, thus rendering the question of set–off moot. *Aetna Casualty and Sur. Co. v. Dodson*, 235 Va. 346, 367 S.E.2d 505 (1988). Similarly, we find the set–off provision here to

be inapplicable since Royston is not "legally entitled" to uninsured motorist benefits.

## III.

We acknowledge that Royston's recovery of workers' compensation benefits will not fully compensate him for the injuries received as a result of the accident. However, under the circumstances of this case, we simply see no intent on the part of the legislature to allow recovery of benefits under both the workers' compensation and uninsured motorist statutes. Under the current state of the law, such recovery is precluded and can only be afforded by legislative action amending the law. Accordingly, we answer the certified question in the negative.

*Richard B. Miller* (*William C. McCorriston*, with him on the brief, of McCorriston, Miho & Miller) for Plaintiff–Appellant.

*Ian L. Mattoch* (*Henry R. Lobdell* with him on the brief) for Defendant–Appellee.